In the Matter of the Estate of FRANK A. MUNSEY, Deceased.

Surrogate's Court, New York County, July 14, 1937.

*DeForest, Cullen & Elder*, for the trustees and for The Metropolitan Museum of Art.

*Cornelius E. O'Neil*, for the life beneficiary and one of the remaindermen, objectants.

*Patrick J. Walsh*, special guardian for infants.

DELEHANTY, S. Deceased died on December 22, 1925. In paragraph fifth of his will he bequeathed what he terms the " rest, residue and remainder " of his estate to his trustees to pay eleven money legacies and to set up a trust for the benefit of his niece and her descendants as follows: " To pay over and deliver to themselves as trustees, Four thousand shares of the Capital Stock of The Munsey Trust Company of Washington, D. C., and to pay over the dividends and income therefrom to my niece, Gertrude E. McNaught, the daughter of the said Emma J. Hyde, during the term of her natural life and upon her death I give and bequeath said stock in equal shares to her children absolutely, the issue of any deceased child to take the share, per stirpes, its parent would have taken if living."

One of the three trustees appointed by the will died on December 5, 1935. The surviving trustees and the representatives of the estate of the deceased trustee instituted this proceeding for the settlement of their accounts as trustees under the quoted text. The account shows receipt by the trustees of the 4,000 shares of stock mentioned by the will as of March 6, 1928, and the receipt of dividends thereon at the rate of five dollars per share during the period of the accounting.

Questions have been raised by the life beneficiary and by one of the remaindermen concerning the right of the estate of the deceased trustee to commissions and the source of the payment of such commissions, if allowed, as well as the source of payment of attorneys' charges incurred in the administration of the trust. They contend that deceased intended the life beneficiary to have the full dividends on the 4,000 shares of stock placed in trust, without deduction for commissions or for any other administration expenses. They likewise contend that deceased intended the remaindermen to have eventually the entire 4,000 shares upon the termination of the trust without diminution for any expenses.

A brief statement of some of the provisions of the will seems desirable in order to understand the basis for this asserted construction. In paragraph sixth deceased directed the payment of money legacies to various persons " out of the balance of my estate remaining after the payment of the bequests as directed by the fore-

going provisions of this will." In paragraph seventh he directs the setting aside of several independent funds sufficient to produce stated annual amounts of income for specified persons. Additional general legacies are bequeathed in paragraphs eighth, ninth and tenth. The remaining estate " after payment of legacies in accordance with the foregoing provisions of this will " is bequeathed to the Metropolitan Museum of Art. Paragraph twelfth provides: " Each and every sum which my said executors and trustees are hereinbefore directed to pay to any individuals or corporations, is intended by me as a bequest or legacy to such individual, individuals or corporations, which bequest and bequests are hereby made and which legacy or legacies are hereby given to the said individual, individuals or corporations respectively." In paragraph fifteenth all inheritance, transfer or other taxes are directed to be paid out of the general estate " without impairing or reducing the amount of any legacies or payments herein given or directed to be made, and such taxes are charged against the final residue given to the Metropolitan.

It must be and it is conceded by the trust beneficiaries that as a general rule expenses in the administration of a trust are payable out of the trust fund. This rule may not apply if a contrary intention is expressed. The various provisions of the will to which reference has been made are asserted by the beneficiaries to indicate deceased's intention to charge these administration expenses against the bequest to the Museum and to exonerate the trust fund.

The court holds that these provisions neither singly nor collectively establish any such intention. The preference given in paragraph sixth to the legatees mentioned in the preceding paragraphs of the will is in the form generally used to indicate a preference for particular legatees in case the estate is not sufficient to pay all legacies in full. Deceased's purpose in including the provisions of paragraph twelfth is not clear. It may be that because the gift of the residue in paragraph fifth is expressed to be in trust deceased sought to indicate by the provisions of paragraph twelfth that the money legacies elsewhere given were to vest immediately upon his death. This seems logical when it is considered that in paragraph thirteenth the executors are given five years in which to convert the estate into cash and are directed to pay all bequests as soon as sufficient money is realized to do so. Paragraph thirteenth states that it is deceased's intention that this direction shall not prevent the vesting of the legacies immediately upon his death. Although it was unnecessary to have dealt with the vesting of legacies in both paragraphs twelfth and thirteenth there seems no doubt that deceased had the question of the vesting of the legacies

in mind and used the language of paragraph twelfth to express his intentions. Paragraph twelfth refers to " each and every sum." This text indicates that the paragraph dealt with money legacies rather than with the specific gift of stock.

The direction in the trust provisions is to pay " dividends and income " rather than the " net income " and the direction is to distribute " said stock in equal shares " to the children of the life beneficiary in equal shares. The trustees are given no power to invest and reinvest. Hence the life beneficiary's income can be realized only from dividends. In these circumstances the reference to " dividends and income " rather than " net income " is apt. Since the remainder gift is of the stock it was necessary in directing distribution upon the termination of the trust to refer to " said stock." Some such phrase was necessary to indicate that the principal of the trust, consisting of the stock, was to be distributed.

The provisions of paragraph fifteenth directing payment of inheritance, transfer and other taxes out of the net residue contain nothing to indicate that the administration expenses of the trust are to be paid out of this residue also. In support of the argument that the trust capital is not chargeable reference is made to the fund set up by the trustees to produce the various annual amounts provided for in paragraph seventh. It is stated by the two beneficiaries interested in the trust under paragraph fifth that the trustees under the seventh paragraph have established funds sufficient in amount to produce the annual income payable to the respective beneficiaries and in addition sufficient to pay all expenses and commissions incident to the administration of the trust under paragraph fifth. There is nothing before the court to indicate what amounts were actually set up by the trustees under paragraph seventh. No matter what such amounts may be the issues here are not affected thereby. The trustees are required in paragraph seventh to set up funds sufficient in all reasonable contingencies to produce the respective amounts of income payable. Deceased authorized his trustees to fix the amounts. Whether they fixed excessive amounts or not bears not at all on the present problem. The fact that paragraph seventh does not dispose of the remainders of these trusts is immaterial.

The will of deceased apparently was prepared by a lawyer who had had some experience. If deceased had intended his final residue to stand the cost of administering the trusts he could have so specified. The expenses of administering the trusts were not ascertainable at the date of death of deceased and could not be ascertained until the trust terminated. It cannot be supposed that deceased intended to hold up the distribution of his final residue

until the termination of the trust and until the expense of administering the trust was finally fixed. So extraordinary a departure from the norm of trust administration would not have been left to inference in a will so carefully drawn as is this. The court holds that all necessary expenses of the trust administration are payable by the trust.

In the year 1930 the trustees, the residuary legatee, the beneficiary of the trust here accounted for and some of the remaindermen under the trust here accounted for had discussions respecting some of the matters which are now presented to the court for decision. As a result of those discussions an agreement was made on August 21, 1930, under which the trustees, including the now deceased trustee, agreed to waive one-half of their commissions both on principal and on income of the trust fund and agreed to accept in full payment one-half of the commissions allowable by statute. The residuary legatee agreed to contribute annually and until the death of the life tenant something toward the one-half commissions on income. The balance of such one-half commissions was to be paid under the agreement out of the income of the trust. Under the agreement the one-half commissions on principal which the trustees were to have in full compensation were to be paid out of the principal funds of the trust when payment was made to the remindermen. The life beneficiary and such of the remaindermen as were parties to the agreement indemnified the executors and the residuary legatee against any liability for payment of such principal commissions. The life beneficiary and one of the remaindermen now file objections to the payment of any compensation whatever to the deceased trustee.

The deceased trustee served as such from 1926 until his death in 1935. The trust is not yet terminated since the life beneficiary is still living. The objecting parties take the narrow view of the agreement that it excludes compensation of any sort to a trustee who ceased to function during the life of the trust. They assert that under the agreement commissions were payable only when the remaindermen received the capital of the trust. They assert that allowances to a deceased trustee are made on the theory of compensation for service actually rendered rather than upon statutory commissions and that since the agreement does not provide expressly for compensation none can be awarded the estate of the deceased trustee. They argue further that if compensation is to be given to the deceased trustee it should be nominal since the shares have been held by the corporate trustee and the deceased trustee had only the duty to receive and turn over dividend checks.

The court is of opinion that too narrow a view of the agreement is taken by objectants. There is still room under its terms for an allowance to the deceased trustee. Had he completed his work he would have been entitled on payment of the fund to the remainder-men to receive one-half the statutory commissions on principal. The court deems his service sufficient to warrant the allowance to his estate of one-quarter commissions on principal. By the agreement, however, the deceased trustee stipulated that nothing would be taken out of the capital of the trust so long as the life beneficiary lived. That deferment of the date of compensation is still operative and the court holds that the compensation allowed is payable only upon the termination of the trust. This compensation will then be a capital charge.

In view of the ruling that the expenses of the trust are to be chargeable to it the compensation of the attorneys for the trustees is payable out of the trust principal. The services rendered by the attorneys relate to this accounting only. In itself the accounting is of extreme simplicity. It sets up in capital account the original 4,000 shares of the stock of Munsey Trust Company only. No transactions in capital account are reported. On the income side there are reported the dividends on the capital stock in the trust, the payment of commissions on income to the trustees and the payment of the balance to the life beneficiary. The only matter in the accounting which required substantial service is the construction problem. Having in mind the importance of that problem and the amount in controversy, the court deems an allowance of $1,500 adequate to compensate the attorneys for the trustees. They will be allowed the disbursements which they claim less so-called office stenographic charges which are disallowed.

The parties interested may avoid the necessity for sale of any of the capital assets of the trust fund by contributing out of their own resources the moneys necessary for the payments here authorized. Lacking such contributions the trustees are authorized to make such sales of capital assets as will provide enough cash for the payments.

Submit, on notice, decree construing the will and settling the account accordingly.